Tania L. Whiteleather SBN 141227
Law Offices of Tania L. Whiteleather, Inc.
5445 E. Del Amo Blvd. Ste 207
Lakewood, CA 90712
tel (562) 866-8755     fax (562) 866-6875
tlwhiteleather@gmail.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.W., a minor, by and through his Guardian Ad NICHOLE WILDER,<br><br>   Plaintiff,<br><br>   v.<br><br>ENTERPRISE ELEMENTARY SCHOOL DISTRICT, A Local Educational Agency,<br><br>   Defendant. | CASE NO.<br><br>COMPLAINT FOR ALTERATION OF REMEDIES AWARDED AT HEARING |

Plaintiff L.W., by and through his guardian ad litem, NICHOLE WILDER, alleges as follows

**INTRODUCTION**

1.  This court has original jurisdiction of this action under 28 U.S.C. 1331 because it arises under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. 1400, et seq.  This is an action for partial alteration of the remedies ordered by the California Office of Administrative Hearings ("OAH") on January 31, 2022.  Those remedies awarded compensatory education to

1

L.W. for Defendant Enterprise Elementary School District ("EESD's") failure to provide a free appropriate public education or "FAPE" to L.W. during the period at issue. Plaintiff contends that the award was appropriate but that the administrative law judge ("ALJ") inappropriately ordered that the parent – not EESD – locate and select several nonpublic agencies to provide the compensatory services that L.W. required as a remedy.

## JURISDICTION AND VENUE

2. This court has original jurisdiction of this action under 28 U.S.C. 1331, 1343(a)(3), 1343(a)(4), and 1367(a).

3. Venue is proper in the Eastern District of California under 28 U.S.C. 1391(b) because Plaintiff and Defendant are located in Shasta County which is located within the geographic boundaries of the United States District Court for the Eastern District of California.

4. Plaintiff contends that no further exhaustion of any federal causes of action raised in this matter is required as an administrative due process hearing has been held and decided by OAH pursuant to IDEA in Case No. 2021040393.  The OAH Decision was issued on January 31, 2022, less than ninety (90) days ago; Plaintiff has timely filed his appeal/complaint.  A copy of that OAH Decision is attached hereto as Exhibit 1.

## THE PARTIES

5. L.W. is a five-year-old student with a disability who, at all times relevant to this complaint, has been a

student residing in the attendance area of the Enterprise Elementary School District ("EESD"). L.W. is eligible for special education as a student with significant multiple disabilities and is medically fragile. He is eligible under IDEA and State law for special education and related services.

6. NICHOLE WILDER is the mother of L.W. and, at all times relevant to this complaint has been the individual responsible for L.W.

7. Defendant ENTERPRISE ELEMENTARY SCHOOL DISTRICT ("EESD") is, and at all times herein mentioned was a school district duly organized and existing under the laws of the State of California as a Local Educational Agency (LEA). At all times relevant to this matter, EESD has had the sole responsibility as a local educational agency or "LEA" as L.W.'s District of Residence or "DOR," to provide appropriate education to him pursuant to IDEA, i.e., the Individuals with Disabilities Education Act State law.

**COMPLAINT**

8. L.W. is a minor with multiple disabilities; he is medically fragile and cannot be around people who have or might have a cold or other infections. L.W. has Wolf-Hirschhorn Syndrome, an immunity disorder, intellectual disability, and needs occupational therapy, speech and language therapy, physical therapy, and behavior services, among other services. He is unable to operate a computer, laptop, or other device on his own and, as a

3

result of his low ability and low physical skills, needs someone to help him even pay attention and operate any technical device. At home, his parent has privately provided the licensed vocational nurse he requires to be by his side to monitor his health and prevent health emergencies.

9. L.W.'s body has limited ability to fight off an infection. On multiple occasions, after being exposed to someone with a cold, L.W. has had a severe reaction, resulting in his being airlifted, intubated, and placed in a coma while he remained in the hospital for days. Several times, his life has been at risk.

10. When L.W.'s doctors informed EESD in 2020 that L.W. should be educated in the home, EESD simply provided a laptop to him, failing to provide anyone to work with him in person so that he could access an education. Given that, in the first EESD assessment of L.W. in early 2020, EESD had identified L.W.'s very low skills in adaptive behavior (i.e., he was learning to turn over at age three and had very limited language), it was clear that he could not navigate a computer or laptop without in-person help and guidance.

11. EESD ignored the medical doctors' letters as well as the parent's information about a one-to-one licensed vocational nurse (to monitor and keep L.W. safe), never offering that as part of his IEP. That LVN issue has yet to be heard by OAH and is the subject of a second, pending due process complaint.

4

12. When the parent consented to an assessment by EESD in assistive technology – to determine if L.W. could actually use a LAPTOP or other technology – EESD did not allow the assessor to write his report according to State requirements. (That issue is also identified in a second, pending due process complaint.) The assessor's oral report was that L.W. required an individual by his side/in-person to help him use a LAPTOP or other technology if he were to access an education from his home.

13. When the parent did not agree to "teleservices" only for L.W. – i.e., that he would be given a laptop or chromebook and would be anticipated to use that device without any in-person assistant – EESD filed a due process complaint to force the parent to accept its offer of "teleservices" only, without any in-person educational or related services. EESD also claimed that, although the parent had provided any and all requested medical records, she had provided an authorization for release of medical information to EESD, and at least three of L.W.'s medical doctors had written letters stating that L.W. should be educated in the home because of his medical issues, EESD claimed that, after two "Health Assessments" in 2020 and extensive medical records, it still could not determine L.W.'s unique health needs related to his education.

14. The parent then filed a complaint and successfully moved to consolidate it with EESD's complaint. The issues by EESD and the parent were heard

5

on November 16, 17, 18, 19 and December 2, 3, and 7, 2021.

15. On January 31, 2022, OAH issued its Decision, finding for L.W. on each issue he had raised and against EESD on its issue. Plaintiff does not seek reversal of any of the findings or the basic Order for services by OAH. Instead, Plaintiff seeks an alteration of a portion of the ALJ's Order.

16. In the OAH Decision, the ALJ ordered that

> 1. Enterprise must fund 40 hours of direct, individual, in-person, in-home, specialized academic instruction for Student provided by a certified nonpublic agency of Parent's choice. ...All hours will be available to be used until February 1, 2024 and will thereafter be deemed forfeited.
> 2. Enterprise must fund 40 hours of direct, individual, in-person, in-home, speech and language services for Student provided by a nonpublic agency of Parent's choice... All hours will be available to be used until February 1, 2024, and will thereafter be deemed forfeited.
> 3. Enterprise must fund 20 hours of direct, individual, in-person, in-home, occupational therapy services for Student provided by a certified nonpublic agency or Parent's choice.... All hours will be available to be used until

6

> February 1, 2024, and will thereafter be deemed forfeited.
>
> 4. Enterprise must fund 4 hours of direct, individual, in-person, in-home, physical therapy for Student provided by a certified nonpublic agency of Parent's choice.... All hours will be available to be used until February 1, 2024, and will thereafter be deemed forfeited.

17. While the Decision gave L.W. necessary services to compensate for what EESD had denied him, it placed the burden of identifying those services – nonpublic agency services – on the parent, who is not a school district and is not even a teacher. Not only does the parent lack access to names of nonpublic agencies and service providers, after much time and diligent searching, she has been unable to identify nonpublic agencies to provide services to L.W. in all but one of the areas identified by the OAH administrative law judge.

18. Over the period since the January 31, 2022 OAH Decision, L.W.'s parent has worked to locate and identify nonpublic agencies to provide the services ordered by the OAH ALJ. She contacted EESD about non-public agencies that might provide services to L.W. She contacted the local SELPA (Special Education Local Plan Agency, the agency that oversaw and funded EESD's special education) to obtain names of nonpublic agencies to provide L.W. services. L.W.'s mother then called those agencies,

including Communication Across Barriers, Connecting to Care, Cresswell Physical Therapy, Dynamic Wellness, New Life Physical Therapy, Presence Learning, Pristine Rehab Care, Redding Speech/Language, Shelton OT, Talk Pater Live, The Hello Foundation, Therapy Travelers, and others.

19. Many of those nonpublic agencies did not offer in-person, in-home services.  Some did not offer direct services.  Some were not providing services in L.W.'s area.  The physical therapy nonpublic agencies were only providing in-clinic services.  In short, except for occupational therapy, L.W.'s mother was unable to identify nonpublic agencies to provide her son with the in-person services ordered by the OAH ALJ.

20. L.W.'s parent has approached EESD staff to inquire about potential nonpublic agencies to provide L.W. with services.  At each step, she has obtained no information about such available agencies and, to date, has been unable to identify any nonpublic agency to provide compensatory education services to her son except for one, in the area of occupational therapy.

**FIRST CAUSE OF ACTION**

For Partial Alteration of the OAH Remedy
For Compensatory Education Services to L.W.

21.  Plaintiff incorporates by reference each and every allegation of Paragraphs 1 through 20 of the Complaint as though fully set forth herein.

22.  Plaintiff (and his parent) lack the ability to

8

locate appropriate nonpublic agencies to work with EESD to provide the compensatory education services awarded him by OAH in its January 31, 2022 Decision. While the award of compensatory education is appropriate, the order that L.W. and his parent, <u>who are not local educational agencies</u>, must bear the responsibility of locating the nonpublic agencies who can provide L.W. with the OAH-ordered services is unreasonable, especially in light of the fact that EESD itself has claimed it has had problems locating providers in the past.

23. Under the Individuals with Disabilities Education Act or "IDEA," it is the responsibility and duty of a child's school district, his "district of residence," to assess him, identify any disabilities or needs that impede his education, and to provide services to address those unique educational needs. The district of residence must offer a disabled child who requires special education a free, appropriate, public education or "FAPE."

24. In the OAH Decision, after the administrative law judge found that EESD had failed to provide a FAPE to L.W., that administrative judge then placed the burden of finding compensatory education services on the parent, apparently expecting the parent to locate and identify compensatory service nonpublic agencies. EESD, a local educational agency, receives funding from the State (which receives funding from IDEA) in exchange for complying with IDEA. EESD had been unable to locate and

9

identify nonpublic agencies to provide L.W. with educational services, and has now been relieved of its duty to provide FAPE; the duty has now been placed on the parent who, among other challenges, has another child with Wolf-Hirschhorn Syndrome and three other neuro-typical children of school age. Simply put, it was EESD's duty to provide FAPE to L.W. Now that EESD has been found to have denied L.W. a FAPE, the burden to locate and identify nonpublic agencies to provide L.W. with FAPE should not be the burden of the parent.

25. Because L.W.'s compensatory education services are limited and must be used by February 1, 2024, without any options for viable nonpublic agencies who can provide those services, L.W. is, once again, going to be denied a FAPE.

26. It should be the duty of EESD to locate a nonpublic agency to provide the compensatory services to L.W. that were ordered by OAH on January 31, 2022.

**SECOND CAUSE OF ACTION**

For Award of Reasonable Attorney's Fees and Costs.

27. Plaintiff incorporates by reference each and every allegation of Paragraphs 1 through 26 of the Complaint as though fully set forth herein.

28. Plaintiff has obtained payment of his attorney's fees from EESD for the underlying OAH due process hearing and does not need to seek those here. However, because of the burden placed on L.W. and his parent... to locate service providers who are qualified to provide the OAH-

ordered compensatory education...Plaintiff is unable to obtain the full remedy ordered by OAH.  Plaintiff contends that making his parent responsible for locating nonpublic agencies to provide the OAH-ordered services is an unreasonable burden on her and, because of the fact that she is unable to locate such services, further denies L.W. a FAPE.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests relief as follows:

1. For alteration of the OAH administrative Decision and Order that placed the burden of finding the nonpublic agencies for OAH-ordered compensatory education services on Plaintiff and his parent and for an order that EESD be required to identify and secure contracts with any such agency;

2. For award to Plaintiff of is reasonable attorney's fees and costs in prosecuting this matter;

3. For such other and further relief as the Court deems proper.

Dated: April 25, 2022

> By: /s/ Tania L. Whiteleather
> TANIA L. WHITELEATHER
> Attorney for Plaintiff